AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, COUNCIL OF PRISON LOCALS, LOCAL 1286, Petitioner,

v.

UNITED STATES DEPARTMENT OF JUSTICE, Federal Prison System; Honorable Thomas P. Lewis, Arbitrator, Federal Mediation and Conciliation Service; and United States of America, Respondents.

No. 82–3177.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1983.

Decided July 9, 1984.

Rehearing and Rehearing En Banc Denied Nov. 6, 1984.

---

Robert L. Templeton (argued), Ashland, Ky., for petitioner.

James P. Foley, Labor Relations Specialist, Federal Prison System, William Owen (argued), Washington, D.C., Thomas P. Lewis, Thomas L. Self, U.S. Atty., E.D. Kentucky, Lexington, Ky., for respondents.

Before EDWARDS and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

The American Federation of Government Employees, Council of Prison Locals, Local 1286 (A.F.G.E.), has petitioned this court to review and set aside the decision of an arbitrator which held that the respondent, the Federal Prison System of the United States Department of Justice (Government), properly discharged one John P. Rickett (Rickett), who is not a party to this action.

Examination of the record has disclosed the following relevant chronology. On February 20, 1980, Rickett, a cook employed at the Federal Correctional Institution at Ashland, Kentucky, was served with a notice of discharge. It was asserted that Rickett had falsified an application for employment related injury compensation, and had also taken an unexcused and unauthorized absence of five consecutive work days. On March 20, the warden of the Ashland facility determined that the charges against Rickett were supported by the evidence and thereupon terminated his employment.

Subsequent to the Government's refusal to reinstate Rickett, the A.F.G.E. initiated arbitration proceedings. The threshold issue confronting the arbitrator was the standing of A.F.G.E. to invoke arbitration on behalf of Rickett. The arbitrator resolved the controversy in favor of the Government and denied standing to A.F.G.E. pursuant to the relevant terms of the agreement between the Government and the union. A timely appeal was thereupon initiated by A.F.G.E. pursuant to 5 U.S.C. § 7121.[1]

The Government moved to dismiss the appeal for the reason that "the named appellant does not have standing to initiate an appeal". *A.F.G.E., etc. v. United States Department of Justice*, No. 82–3177 (6th Cir. 9–6–83). Accordingly, the thresh-

---

1. The Union's jurisdictional statement asserted, [i]nasmuch as the matter sought to be raised before the Arbitrator under the negotiated grievance procedures of said agreement was one covered by 5 U.S.C. § 7512, removal of an employee, jurisdiction of this Court properly arises under 5 U.S.C. § 7121(f) and 28 U.S.C. § 2349. The scope of review is limited by 5 U.S.C. §§ 7703.

old issue joined in this appeal is one of first impression addressing the application and interpretation of § 7121(f) of the Civil Service Reform Act of 1978 (Act) which reads in pertinent part as follows:[2]

> (f) In matters covered under sections 4303 and 7512 of this title which have been raised under the negotiated grievance procedure in accordance with this section, section 7703 of this title pertaining to judicial review shall apply to the award of the arbitrator in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board.

Resolution of this issue in favor of the Government would obviate any "case or controversy" before this court thereby foreclosing consideration of the merits of the case. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

Section 7703 relevantly provides:

> (a)(1) Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.

The Government has asserted that the language of § 7121(f) read *in para materia* with § 7703 confers standing to initiate judicial review of an adverse arbitrator's award only upon the employee adversely affected.[3] Accordingly, this court has been petitioned to dismiss the within action because A.F.G.E., and not the aggrieved employee, is the petitioner.

■ Disposition of this threshold dispute addresses the scope of judicial review and remedy available under the Civil Service Reform Act of 1978. The Supreme Court has instructed that interpretation of a statute should "begin with the language of the statute itself. See, *e.g., Universities Research Assn. v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981)". *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 23, 102 S.Ct. 2202, 2207, 72 L.Ed.2d 639 (1982). Generally, the congressional intent is reflected by the ordinary import of the words used. *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Therefore, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ... be regarded as conclusive". *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Nevertheless, a literal statutory construction may be rejected "if it leads to an interpretation which is inconsistent with legislative intent expressed elsewhere in the statute or legislative history, or to an absurd result". *S.E.C. v. Ambassador Church Finance/Development Group, Inc.,* 679 F.2d 608, 611 (6th Cir.1982).

Without straining the impact of the plain statutory language, it is apparent that the Civil Service Reform Act of 1978 (Act) affords any federal *employee* subject to personnel action covered under §§ 4303 and 7512 the right of election to proceed either to the Merit Systems Protection Board or under a negotiated contract grievance procedure. *See* 5 U.S.C. §§ 7121(e)(1), 7701,

**2.** Jurisdiction for judicial review under Title 5 §§ 7121 and 7703 is now exclusively the domain of the newly created Court of Appeals for the Federal Circuit. Because the within petition was filed prior to the effective date of the Federal Courts Improvement Act of 1982, the relevant amendments to the judicial review provisions of Title 5 have no impact on this litigation. *See Scarborough v. Office of Personnel Management,* 723 F.2d 801, 805 (11th Cir.1984). *See generally Bush v. Lucas,* 462 U.S. 367, ——, 103 S.Ct. 2404, 2416 n. 351, 76 L.Ed.2d 648 (1983); *Poorsina v. Merit System Protection Board,* 726 F.2d 507, 508 n. 1, (9th Cir.1984).

**3.** As noted, § 7121(f) limits judicial review of final agency decisions to those which involve particularly severe and personally acute personnel actions, *viz:* reduction in grade or removal for poor performance *per* 5 U.S.C. § 4303, and, as in Rickett's case, discharge "for such cause as will promote the efficiency of the service", 5 U.S.C. § 7513, under § 7512. Employment actions and arbitration decisions involving other matters, which might be of less direct importance to the individual than to the union, are not resolvable by reference to § 7121(f).

7703.[4] The Act recognizes a duality of interest among employees and the Union. Therefore, it provides that should there be an election to pursue the negotiated grievance procedure, the employee is entitled to proceed *in propria persona;* however, the union is accorded the option to attend the grievance proceeding and advance its own interests notwithstanding the individual's refusal of assistance from the labor organization. 5 U.S.C. § 7121(b)(3)(A), (B).[5] Only the labor organization may invoke binding arbitration to resolve unacceptable awards resulting from the negotiated grievance mechanism. 5 U.S.C. § 7121(b)(3)(C). Of course, the aggrieved employee has the legitimate expectation that a union's decision to proceed to binding arbitration will be made in good faith representation of the individual's rights.

If binding arbitration of an adverse personnel action is invoked, then judicial review may be initiated pursuant to § 7121(f), *supra.* As previously observed, the literal interpretation of §§ 7121(f) and 7703 places the election to undertake judicial review solely in the adversely affected employee. Literal interpretation is consistent with the obvious legislative desire to permit the critically affected employee to initially exercise the challenge to an arbitrator's award that adversely affects him as the aggrieved employee. Thus, it is the *employee* who from the inception of the proceedings determines the procedural avenues to travel, *see* 5 U.S.C. § 7121(e)(1), and the union is without recourse from his decision.

Section 7513 of Title 5 mandates that agency adverse actions may be taken "against an employee *only* for such cause as will promote the efficiency of the service". 5 U.S.C. § 7513(a). Advocation of competent and effective agency administration is a recurring theme of the Act and is one of the two interests which Congress explicitly sought to promote through the enactment. 5 U.S.C. § 7101. The other equally compelling interest identified by Congress was the right of federal employees to have effective impact upon decisions which affect them. *Id.*[6]

---

**4.** It would be appropriate to bear in mind the distinction which the Civil Service Reform Act of 1978 maintains between a "person" and an "employee"; the former may include labor unions while the latter only includes individuals. *See* 5 U.S.C. § 7103(a)(1), (2), which states in pertinent portion:

(a) For the purposes of this chapter—
(1) "person" means an individual, labor organization, or agency;
(2) "employee" means an individual....

**5.** 5 U.S.C. § 7121(b) states:

(b) Any negotiated grievance procedure referred to in subsection (a) of this section shall—
(1) Be fair and simple,
(2) provide for expeditious processing, and
(3) include procedures that—
(A) Assure an exclusive representative the right, in its own behalf or on behalf of any employee in the unit represented by the exclusive representative, to present and process grievances;
(B) assure such an employee the right to present a grievance on the employee's own behalf, and assure the exclusive representative the right to be present during the grievance proceeding; and
(C) provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitra-

tion which may be invoked by either the exclusive representative or the agency.

**6.** Section 7101 of Title 5 is the Civil Service Reform Act's statement of congressional purpose, interest, and desire. It states:

(a) The Congress finds that—
(1) experience in both private and public employment indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing in decisions which affect them—
(A) safeguards the public interest,
(B) contributes to the effective conduct of public business, and
(C) facilitates and encourages the amicable settlements of disputes between employees and their employers involving conditions of employment; and
(2) the public interest demands the highest standards of employee performance and the continued development and implementation of modern and progressive work practices to facilitate and improve employee performance and the efficient accomplishment of the operations of the Government.
Therefore, labor organizations and collective bargaining in the civil service are in the public interest.
(b) It is the purpose of this chapter to prescribe certain rights and obligations of the

Statutory construction of the Act in a manner consistent with its obvious language promotes the legislative purposes enunciated in § 7101 in three ways. First, the right of the employee to decide upon the course of action to be undertaken to resolve his predicament is advanced. Obviously, Congress was mindful of the fact that in most instances the grievant's concerns would coincide with the concerns of the labor organization; thus the Act was properly designed to facilitate a union-management dialectic. *See, e.g., Bureau of Alcohol, Tobacco and Firearms v. F.L. R.A.,* — U.S. —, —, —, 104 S.Ct. 439, 447, 449, 78 L.Ed.2d 195 (1983). However, the thrust of the action is the promotion of the rights and interests of the employee.[7] Thus, Congress consciously delegated to the grievant absolute authority to determine the options of resolving his adversity.

. Second, the severity of the penalty imposed upon the employee stimulates him to select, pursue, and insist upon an expeditious resolution of the controversy. This encouragement of efficiency echoes the prime directive of § 7101(b): "The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government."

Third, control over the action by the affected employee also promotes the desire for a speedy disposition of the discharge as it impacts the operational efficiency of the agency. *Compare* § 7513(a) *with* § 7101(a)(2), (b).

Therefore, it may not rationally be argued that application of the literal terms of the Act leads to a result which is inconsistent with the congressional intent, or which is absurd. *Cf. Henry T. Patterson Trust v. United States,* 729 F.2d 1089, 1094 (6th Cir.1984); *S.E.C. v. Ambassador Church*

*Finance/Development Group, Inc.,* 679 F.2d 608, 611 (6th Cir.1982).

Finally, examination of the legislative history of the Civil Service Reform Act of 1978 supports the foregoing analysis. As originally drafted, the House version required an adverse award of an arbitrator to be appealed directly to the Federal Labor Relations Authority even where the grievance resulted in discharge. The Senate specifically revised that language to permit employees subjected to adverse actions of an arbitrator to institute immediate appellate review. The revision is explicitly discussed in the "Joint Explanatory Statement of the Committee on Conference" section of the House Conference Report on the bill:

### JOINT EXPLANATORY STATEMENT OF THE COMMITTEE ON CONFERENCE

The managers on the part of the Senate and the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S.2640), the Civil Service Reform Act of 1978, submit the following joint statement to the House and the Senate in explanation of the effect of the major actions agreed upon by the managers and recommended in the accompanying report:

\* \* \* \* \* \*

### B. JUDICIAL REVIEW ON THE DECISIONS OF THE FEDERAL LABOR RELATIONS AUTHORITY

The Senate bill made reviewable in court decisions of the Authority concerning unfair labor practices, including awards of arbitrators relating to unfair labor practices. Otherwise, the Senate provides that all decisions of the Authority are final and conclusive, and not subject to further judicial review except for

---

employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government. The provisions of this chapter should be interpreted in a manner consistent with the requirement of an effective and efficient Government.

7. Section 7101 identifies, after all, the "statutory protection of the right of *employees*", not their exclusive representatives, as the imperative adopted by Congress.

questions arising under the Constitution. (Section 7204(1); section 7216(f); section 7221(j).) The Senate provides that decisions of arbitrators in adverse action cases would be appealable directly to the court of appeals or court of claims in the same manner as a decision by the [Merit Systems Protection Board (MSPB)] (section 7221(b)).

In the House bill, unfair labor practice decisions are appealable as in the Senate. In addition, all other final decisions of the Authority involving an award by an arbitrator, and the appropriateness of the unit an organization seeks to represent are also appealable to the courts (section 7123(a)). Under the House bill decisions by arbitrators in adverse action cases are first appealable to the Authority before there may be an appeal to the court of appeals.

In the case of arbitrators [sic] awards involving adverse actions, the conferees elected to adopt the approach in the Senate bill. The decision of the arbitrator in such matters will be appealable directly to the court of appeals ... in the same manner as a decision by MSPB.

In the case of those other matters that are appealable to the Authority the conference report authorizes both the agency and the employee to appeal the final decision of the Authority except in two instances where the House recedes to the Senate. As in the private sector, there will be no judicial review to the Authority's determination of the appropriateness of bargaining units, and there will be no judicial review of the Authority's action on those arbitrators [sic] awards in grievance cases which are appealable to the Authority. The Authority will only be authorized to review the award of the arbitrator on very narrow grounds similar to the scope of judicial review of an arbitrator's award in the private sector. In light of the limited nature of the Authority's review, the conferees determined it would be inappropriate for there to be subsequent review by the court of appeals in such matters.

H.R.Con.Rep. No. 95–1717, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723, 2860, 2887.

It appears that Congress was cognizant of the consequences of its decision to incorporate the review restrictions of § 7703 into the statutory provisions providing for judicial review of adverse arbitration awards. Further, the Senate comments appearing in the House Conference Report instruct that it was specifically intended that references in § 7703 to "the Board" be read, for purposes of § 7121(f), as referring to the arbitrator:

Subsection (k) provides for judicial review of an arbitrator's award in matters covered under 5 U.S.C. sections 4303 and 7512 in the same manner and under the same conditions that apply to matters decided by the Merit Systems Protection Board. In applying the provisions of 5 U.S.C. section 7702 (Judicial review of decisions of the Merit Systems Protection Board) the word "arbitrator" should be read in place of the words "Merit Systems Protection Board". It further provides for judicial review of an arbitrator's award in matters similar to those covered under 5 U.S.C. sections 4303 and 7512 which arise under other personnel systems in the same manner and on the same basis as would be available to an employee who had not used the negotiated grievance procedure to appeal the matter.

S.Rep. No. 95–969, 95th Cong., 2d Sess., *reprinted in* [1978] U.S.Code Cong. & Ad. News 2723, 2833.

Accordingly, it is apparent that Congress intended to limit this court's jurisdiction to appeals initiated by the aggrieved employee personally. As recently stated by the Supreme Court: "It is enough that Congress intended that the language it enacted would be applied as we have applied it. The remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court. Congress may amend the statute; we may not." *Griffith v. Oceanic Contractors, Inc.,* 458 U.S. 564, 576, 102 S.Ct. 3245,

3253, 73 L.Ed.2d 973 (1982). *See also Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 124–24, 100 S.Ct. 2051, 2063–66, 64 L.Ed.2d 766 (1980); *Reiter v. Sonotone,* 442 U.S. 330, 344–45, 99 S.Ct. 2326, 2333–34, 60 L.Ed.2d 931 (1979).

Because the petitioner A.F.G.E. is without standing to prosecute this action this court is without subject matter jurisdiction to address the substantive issues presented by the petition.

Consistent with the foregoing, the cause is hereby dismissed for lack of jurisdiction.